UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO: 4:13-CV-00189-BR

| | | |
|---|---|---|
| FLANDERS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| EMI FILTRATION PRODUCTS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the motion of defendants Cody Fitch ("Cody"), Jordan

Fitch ("Jordan"), and Integrity Air Filtration, LLC ("Integrity") (collectively "movants") to

dismiss plaintiff Flanders Corporation's complaint for lack of personal jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(2). (DE #16.)  Plaintiff filed a response in opposition to

the motion, to which movants filed a reply. (DE ## 29, 32.)

Plaintiff is a North Carolina corporation with its principal place of business in North

Carolina.  (Compl., DE # 1-3, ¶ 1.)  It "designs, manufactures, markets and distributes air filters

and related products."  (Smith Decl., DE # 29-4, ¶ 3.)  Defendants EMI Filtration Products LLC,

EMI Filtration Products Management Company, Inc., EMI Filtration Products Holding

Company, Inc., and EMI Filtration Products Equipments Leasing, Inc. are Idaho entities, with

their principal places of business in Idaho.  (Compl., DE # 1-13, ¶¶ 2-6.)  Defendant EMI

Filtration Products-SLC, Inc. is a Utah corporation, with its principal place of business in Utah.

(Id. ¶ 6.)  Defendant EMI Filtration Products-Kent, Inc. is a Washington corporation, with its

principal place of business in Washington.  (Id. ¶ 7.)  These defendants shall be collectively

referred to as the "EMI Defendants."  They "were distributors of Plaintiff's products."  (Smith

Decl., DE # 29-4, ¶ 3.)

This action arises out of a promissory note and related documents (the "Loan Documents") that the EMI Defendants and Idaho residents defendant Darren Fitch ("Darren") and defendant Laurie Fitch ("Laurie") entered into with plaintiff. (See id. ¶¶ 9, 12, 28-30; id., Exs. A-E, DE ## 1-14 to 1-18.) According to plaintiff, multiple events of default under the Loan Documents have occurred, namely nonpayment, with the amount of approximately $5.4 million owed. (Id. ¶¶ 29, 30.) In addition, plaintiff sold to the EMI Defendants products on account, for which those defendants owe plaintiff approximately $3.8 million. (Id. ¶¶ 39, 40.) Plaintiff alleges that defendants have misappropriated the collateral securing the promissory note by transferring it in the midst of plaintiff's collection efforts to Integrity, an Idaho company created by Darren and Laurie's sons and Idaho residents, Cody and Jordan. (Id. ¶¶ 9, 34, 37.)

In July 2013, plaintiff filed this action in North Carolina state court, asserting several claims against the EMI Defendants, Darren, and Laurie based on their failure to pay plaintiff sums due, among other things, and a tortious interference with contract claim against movants. In August 2013, defendants removed the action to this court. In lieu of an answer, movants filed the instant motion to dismiss. Specifically, the movants contend that, as non-residents of North Carolina, this court does not have jurisdiction over them.

The parties agree that plaintiff bears the burden of making a *prima facie* showing of the existence of personal jurisdiction. (Mem., DE # 17, at 5; Resp., DE # 29, at 6.) See also ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012) ("The plaintiff bears the burden to make a prima facie showing of a basis for jurisdiction." (citation omitted)). Where the court does not hold an evidentiary hearing, like here, it "'must construe all relevant pleading

2

allegations in the light most favorable to the plaintiff, assume credibility, and draw the most

favorable inferences for the existence of jurisdiction.'" New Wellington Fin. Corp. v. Flagship

Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (citations and footnote omitted).

> It is axiomatic that, in order for a district court to validly assert
> personal jurisdiction over a non-resident defendant, two conditions
> must be satisfied.  First, the exercise of jurisdiction must be
> authorized by the long-arm statute of the forum state, and, second,
> the exercise of personal jurisdiction must also comport with
> Fourteenth Amendment due process requirements.
> . . . .  Like those of many other states, North Carolina's
> long-arm statute[, N.C. Gen. Stat. § 1-75.4,] is construed to extend
> jurisdiction over nonresident defendants to the full extent
> permitted by the Due Process Clause.  Thus, the dual jurisdictional
> requirements collapse into a single inquiry as to whether the
> defendant has such "minimal contacts" with the forum state that
> "maintenance of the suit does not offend 'traditional notions of fair
> play and substantial justice.'"

Christian Science Bd. of Directors of First Church Christ, Scientist v. Nolan, 259 F.3d 209, 215

(4th Cir. 2001) (citations omitted).

Plaintiff does not contend that the court possesses general jurisdiction over movants, but

rather, it argues that specific jurisdiction over them exists.[1]  (Resp., DE # 29, at 7 & n.1.)  Such

jurisdiction may arise if the defendant's contacts with the forum form the basis for the action.

Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 397 (4th Cir. 2003).  To

determine whether the exercise of specific jurisdiction comports with due process, the Fourth

Circuit has formulated a three-prong test pursuant to which the court "consider[s] (1) the extent

to which the defendant purposefully availed itself of the privilege of conducting activities in the

State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3)

---

[1]Because plaintiff focuses its argument on jurisdiction over the movants collectively, rather than individually, (see Resp., DE # 29, at 11-12 n.2), the court will confine its analysis in similar fashion.

whether the exercise of personal jurisdiction would be constitutionally reasonable." <u>ESAB Grp.</u>,

685 F.3d at 391-92 (quotation and citation omitted) (alteration in original).

Under the first prong of this test, the Fourth Circuit has set forth a non-exclusive list of

factors to consider in the business context, such as here:

> • whether the defendant maintains offices or agents in the forum
> state;
> • whether the defendant owns property in the forum state;
> • whether the defendant reached into the forum state to solicit or
> initiate business;
> • whether the defendant deliberately engaged in significant or
> long-term business activities in the forum state;
> • whether the parties contractually agreed that the law of the forum
> state would govern disputes;
> • whether the defendant made in-person contact with the resident of the
> forum in the forum state regarding the business relationship;
> • the nature, quality and extent of the parties' communications
> about the business being transacted; and
> • whether the performance of contractual duties was to occur
> within the forum.

<u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009) (citations

omitted).    These factors do not weigh in favor of exercising jurisdiction in this case.  The

individual movants have never visited North Carolina or conducted any business here.  (C. Fitch

Aff., DE # 18, ¶¶ 2, 3; J. Fitch Aff., DE # 19, ¶¶ 2, 3.)  They are the only co-owners/members of

Integrity, an Idaho limited liability company with its principal place of business in Idaho.  (C.

Fitch Aff., DE # 18, ¶¶ 3, 4.)  The company does not have any offices or sales representatives in

North Carolina nor does it have any customers or solicit business here.  (<u>Id.</u> ¶ 4.)  None of the

movants owns any property in North Carolina.  (<u>Id.</u> ¶¶ 2, 4; J. Fitch Aff., DE # 1, ¶¶ 2, 4.)  The

movants are not parties to the Loan Documents, (<u>see</u> Compl., Exs. A-E, DE ## 1-14 to 1-18), and

were not involved in their negotiation, (C. Fitch Aff., DE # 18, ¶ 9; J. Fitch Aff., DE # 19, ¶ 9).

4

The only one of the movants that appears to have had any contact with plaintiff is Cody, who either initiated, received, or was copied on, six emails in June 2013 with Helen Harper, plaintiff's Director of Financial Reporting, who was located in North Carolina. (Harper Decl., Ex. A, DE # 29-2.) Those emails concerned the forwarding of EMI's[2] email accounts to plaintiff. (See id.; Resp., DE # 29, at 5.) Cody's email contacts with plaintiff in North Carolina are not sufficient to establish that the movants purposefully availed themselves of the privilege of conducting activities in North Carolina. See Consulting Eng'rs, 561 F.3d at 279-80 (holding that four telephone conversations and twenty-four emails between the parties were not sufficient to show that the defendant purposefully availed itself of the privilege of doing business in the forum where the defendant did not have offices, employees, or property in the forum and had no in-person contact with the plaintiff in the forum and where the alleged tortious interference with contract occurred in India).

Perhaps in recognition of this fact, plaintiff argues that jurisdiction is proper under the "effects test." (Resp., DE # 29, at 7-14.) "Under that test, the plaintiff must establish that specific jurisdiction is proper by showing that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Consulting Eng'rs, 561 F.3d at 280 (internal quotation and citation omitted). The "test does not supplant the minimum contacts analysis, but rather informs it." Id. "Although the place that the plaintiff

_____

[2]In both its complaint and response to the instant motion, plaintiff periodically makes reference to "EMI." (See, e.g., Compl., DE # 1-13, ¶ 37(d); Resp., DE # 29, at 5.) However, it does not identify the EMI entity to which this refers. At any rate, for purposes of the analysis here, it is irrelevant.

feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 626 (4th Cir. 1997).

Because plaintiff alleges that the movants committed the intentional tort of interference with contract and because plaintiff purportedly felt the brunt of harm at its corporate headquarters in North Carolina, the dispute centers on whether plaintiff has made a *prima facie* showing of the movants' expressly aiming their tortious conduct at North Carolina. (See Resp., DE # 29, at 11-14; Reply, DE # 32, at 2-8.) Plaintiff contends that it has made such a showing by virtue of the movants' knowledge that plaintiff was located in North Carolina and would suffer harm here and based on the nexus between North Carolina and the contractual relationship with which the movants allegedly interfered. (Resp., DE # 29, at 12-13; see also Compl., DE # 1-13, ¶ 14.) Even accepting that the movants were aware of plaintiff's North Carolina location and the harm to be suffered in this state and considering that North Carolina law governs the Loan Documents, whose terms were negotiated from and carried out by plaintiff in North Carolina, the court finds that plaintiff has not shown that the focal point of the movants' tortious activity was North Carolina.

The thrust of plaintiff's claim against the movants is that they allegedly "intentionally and wrongfully induced the EMI Defendants, Darren, and Laurie not to perform their obligations under the Loan Documents, including misappropriation of the Collateral and funneling of business, good will, and assets to Integrity." (Compl., DE # 1-13, ¶ 61.) The movants– the parties who allegedly engaged in the wrongful inducement– are residents of or principally conduct business in Idaho. Similarly, the EMI Defendants, Darren, and Laurie– the parties who

6

were allegedly induced not to perform their agreements with plaintiff– are residents of or principally conduct business in a state other than North Carolina. Thus, not surprisingly, the purported acts evidencing the misappropriation of collateral occurred outside of North Carolina. (See Resp., DE # 29, at 4-5 (detailing acts, such as the organization of Integrity in Idaho and Integrity's sale of inventory from EMI's warehouse in Idaho).) Nothing indicates that any of the misappropriated collateral or funneled intangible assets was located in North Carolina. The focal point of the tortious activity was outside of this forum.

To be sure, North Carolina does have a connection with the Loan Documents with which the movants allegedly interfered inasmuch as those contracts were negotiated, administered, and enforced by plaintiff from North Carolina, (Smith Decl., DE # 29-2, ¶ 4); are governed by North Carolina law, (Compl., Exs. A-E, DE ## 1-14 to 1-18); and provide that the obligors agree to personal jurisdiction in North Carolina, (id.). However, this North Carolina connection, even when combined with the movants' knowledge of plaintiff's location in North Carolina and that plaintiff would be damaged here, is not sufficient to show that the movants expressly aimed their behavior at North Carolina. See Consulting Eng'rs, 561 F.3d at 279-81 (holding that although there were telephone conversations and emails between the plaintiff, a Virginia corporation, and the defendant non-resident corporation and although the plaintiff had suffered economic injury in Virginia (the forum), the focal point of the alleged tortious activity was India because that is where the alleged conspiracy to breach the subject contract occurred, among other things, and the defendant's contacts with Virginia were too attenuated to support jurisdiction); Imo Indus., Inc. v, Kierkert AG, 155 F.3d 254, 266-68 (3d Cir. 1998) (concluding that the defendant, a German corporation, had not expressly aimed its tortious conduct at the forum of New Jersey

despite its knowledge that the plaintiff was headquartered there and its knowledge of the

plaintiff's proposed sale of its subsidiary (with which the defendant alleged interfered) because

the events allegedly supporting the tort occurred outside of New Jersey); ESAB Grp., 126 F.3d at

625-26 (holding that the South Carolina district court could not exercise jurisdiction over the

non-resident defendant company and its CEO where the only South Carolina "contact" was the

defendants' knowledge "that the sales leads that [another defendant] supplied might, if fruitful,

ultimately result in less sales to the [plaintiff], which was headquartered in South Carolina").

In sum, several emails exchanged between one of the movants from outside North

Carolina and plaintiff in North Carolina, the nonresident movants' knowledge of plaintiff's

North Carolina location and the likelihood of harm here, and the subject contract having some

connection with North Carolina are not enough to carry the day.  Plaintiff has failed to make a

*prima facie* showing of movants' contacts with North Carolina to justify this court's exercise of

specific jurisdiction over them.

The motion to dismiss of defendants Cody, Jordan, and Integrity is ALLOWED.  Those

defendants and plaintiff's claim for tortious interference with contract are DISMISSED

WITHOUT PREJUDICE.  Plaintiff's claims against the EMI Defendants, Darren, and Laurie

remain.

This 7 February 2014.


_____
              W. Earl Britt
              Senior U.S. District Judge


8