UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO: 4:13-CV-00189-BR

| | | |
|---|---|---|
| FLANDERS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| EMI FILTRATION PRODUCTS LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motions for judgment on the pleadings or, alternatively, to strike and for a preliminary injunction. (DE ## 33, 35.)

## I. BACKGROUND

In July 2013 and by verified complaint, plaintiff, a North Carolina corporation with its principal place of business in North Carolina, filed this action in North Carolina state court, asserting claims against EMI Filtration Products LLC, EMI Filtration Products Management Company, Inc., EMI Filtration Products Holding Company, Inc., EMI Filtration Products Equipments Leasing, Inc., EMI Filtration Products-SLC, Inc., EMI Filtration Products-Kent, Inc. (collectively, the "EMI Defendants"), Darren Fitch ("Darren"), Laurie Fitch ("Laurie"), Cody Fitch ("Cody"), Jordan Fitch ("Jordan"), and Integrity Air Filtration, LLC ("Integrity"). (Compl., DE # 1-13.) Plaintiff's claims arise out of a promissory note and related documents that the EMI Defendants, Darren, and Laurie entered into with plaintiff. In August 2013, defendants removed the action to this court.

Shortly thereafter, in lieu of filing an answer, Cody, Jordan, and Integrity moved to dismiss the claim against them for lack of personal jurisdiction. (DE # 16.) The court recently

allowed that motion, dismissing those defendants from this action. (DE # 46.)

In the meantime, the other defendants filed answers, asserting therein a number of defenses. (DE ## 20, 28.) Thereafter, plaintiff filed the instant motions, and Darren and Laurie filed a notice with the court stating that they had filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code, (DE # 37). In October 2013, counsel for the EMI Defendants moved to withdraw, (DE # 38), and in support thereof stated, "The undersigned is now moving to withdraw as counsel of record for the EMI Defendants because those defendants have now elected not to pursue a defense in this matter, and they have instructed the undersigned to discontinue their representation." (Mem., DE # 39, at 2). On 1 November 2013, U.S. Magistrate Judge James E. Gates allowed the motion to withdraw; directed the EMI Defendants to retain new counsel no later than 22 November 2013; informed them of their obligation to comply with applicable rules and orders of the court; and, directed the Clerk to serve a copy of the order on the EMI Defendants at the address provided by counsel. (DE # 42.) Since that time, nothing has been filed on behalf of the EMI Defendants, including any response to the instant motions.

## II. DISCUSSION

A.  *Motion for Judgment on the Pleadings or, Alternatively, to Strike*

Pursuant to Federal Rules of Civil Procedure 12(c) and 12(f), plaintiff requests that the court enter judgment in its favor on, or strike, certain affirmative defenses that the EMI Defendants[1] assert, namely, failure to state a claim upon which relief may be granted; breach of the implied covenant of good faith and fair dealing; novation; estoppel; failure to mitigate

---

[1] Although the motion is directed to the EMI Defendants' and Darren and Laurie's answers, because Darren and Laurie have filed a petition in bankruptcy, the court considers the motion only as to the EMI Defendants. See 11 U.S.C. § 362(a) (filing of bankruptcy petition operates as a stay of the continuation of a judicial action against the debtor that was commenced before the bankruptcy proceeding).

damages; and, the reservation of the right to amend their answer. (Mot., DE # 33, at 4-5.) Plaintiff's motion is based on the argument that the EMI Defendants have not adequately pled these defenses in accordance with the standards of Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). It does not appear that the Fourth Circuit Court of Appeals has addressed the issue. The district courts within this Circuit are divided. Compare Warren v. Tri Tech Labs., Inc, No. 6:12-cv-00046, at *7 n.7 (W.D. Va. May 15, 2013) (noting that "the district judges in the Western and Eastern Districts of Virginia who have considered the argument have not applied the *Twombly* and *Iqbal* pleading requirements to affirmative defenses raised in an answer" (citing cases)), with Racick v. Dominion Law Assocs., 270 F.R.D. 228, 234 (E.D.N.C. 2010) ("This court . . . agrees with the district courts within the Fourth Circuit that have considered the question and concludes that 'the considerations of fairness, common sense and litigation efficiency underlying *Twombly* and *Iqbal*' mandate that the same pleading requirements apply equally to complaints and affirmative defenses." (citation omitted)). Fortunately, the court can save its resolution of the issue for another day. Given the current posture of the case and the Fourth Circuit Court of Appeals' recognition that motions to strike[2] are not favored, see Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir.

---

[2] Although Plaintiff[ has] moved under both Rules 12(c) and 12(f) of the Federal Rules of Civil Procedure, this Court will treat the motion as one to strike [defendants'] affirmative defenses under Rule 12(f). A Rule 12(c) motion for judgment on the pleadings is more appropriately resolved where "all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 208 (3d ed. 2004). On the other hand, a Rule 12(f) motion to strike is more fitting for situations, such as the one at bar, where a plaintiff challenges only some of the defenses raised in a defendant's pleading. *Id.* at § 1369, at 260 (noting that Rule 12(f) "serves as a pruning device to eliminate objectionable matter from an opponent's pleadings and, unlike the Rule 12(c) procedure, it is not directed at gaining a final judgment on the merits").

(continued...)

3

2001) ("Rule 12(f) motions are generally viewed with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'" (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1380 (2d ed. 1990))), the court sees no useful purpose in striking the defenses. Accordingly, the court will deny plaintiff's motion to strike without prejudice to its renewal should the EMI Defendants decide to defend the case and/or should the case ultimately proceed against Darren and Laurie.

  B. *Motion for Preliminary Injunction*

Plaintiff requests that pursuant to Federal Rule of Civil Procedure 65, the court preliminarily enjoin the EMI Defendants[3] from "interfering with Flanders' efforts to collect and preserve Defendants' collateral;" "withholding their Collateral from Flanders;" "selling or disposing of Defendants' Collateral; and" "using any of Defendants' Collateral including customer lists, contact lists, and general goodwill of the EMI Defendants." (Mot., DE # 35, at 7-8.) "To obtain a preliminary injunction, a moving party must establish the presence of the following: (1) 'a clear showing that it will likely succeed on the merits'; (2) 'a clear showing that it is likely to be irreparably harmed absent preliminary relief'; (3) the balance of equities tips in favor of the moving party; and (4) a preliminary injunction is in the public interest." United States v. South Carolina, 720 F.3d 518, 533 (4th Cir. 2013) (citation omitted). The court

---

[2](...continued)
Haley Paint Co. v. E.I. Du Pont De Nemours and Co., 279 F.R.D. 331, 335 (D. Md. 2012).

[3]Plaintiff's motion for preliminary injunction is directed to <u>all</u> defendants. However, because Darren and Laurie have filed a petition in bankruptcy, see supra n.1, and because Jordan, Cody, and Integrity have been dismissed from the action, the court considers the motion only as to the EMI Defendants.

4

examines these factors in turn.[4]

As to the likelihood of success, the court considers only plaintiff's breach of contract claim.[5] Under North Carolina law,[6] the elements of a breach of contract claim are "(1) existence of a valid contract and (2) breach of the terms of that contract." Ahmadi v. Triangle Rent A Car, Inc., 691 S.E.2d 101, 103 (N.C. Ct. App. 2010) (internal quotation marks and citation omitted).

According to plaintiff's verified complaint and the sworn declaration of its Director of Financial Reporting, plaintiff and defendants EMI Filtration Products LLC and EMI Filtration Products Holding Company, Inc. executed a promissory note pursuant to which those defendants agreed to pay plaintiff the principal amount of $5,056,360.17. (Compl., Ex. A, DE # 1-14; Harper Decl., DE # 35-1, ¶ 5.) As security for that note, the EMI Defendants executed a security agreement by which they each granted to plaintiff

> a continuing security interest in and lien upon the following
> described property, whether now owned or hereafter acquired, and
> any additions, replacements, accessions, or substitutions thereof
> and all cash and non-cash proceeds and products thereof
> (collectively, "Collateral"):
> All of the personal property and fixtures of such Debtor of every
> kind and nature including, without limitation, all accounts,
> equipment, accessions, fixtures, inventory, goods, chattel paper,
> instruments, investment property (including without limitation the

---

[4]Given that the EMI Defendants did not file any responsive documents to the motion and that they have not retained counsel in accordance with the court's order, it would be fruitless for the court to hold a hearing on the motion. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 938 (4th Cir. 1995) (recognizing that "a court need not conduct an evidentiary hearing before issuing a permanent injunction if the affidavits and documentary evidence clearly establish the plaintiff's right to the injunction such that a hearing would not have altered the result").

[5]Although plaintiff asserts additional claims against the EMI Defendants (i.e., claims for money owed on account, an accounting, and possession of collateral), the court does not analyze plaintiff's likelihood of success on those claims. The injunctive relief plaintiff requests is within the remedy permitted in the event of breach of contract.

[6]The pertinent agreements provide that they are governed by North Carolina law. (Compl., Ex. A, DE # 1-14, at 6; id., Ex. B, DE # 1-15, at 8.)

5

> Pledged Interests and the other Pledged Property), documents,
> letter-of-credit rights, deposit accounts and general intangibles,
> wherever located.

(Compl., Ex. B, DE # 1-15, at 1.) The agreement provides a number of remedies to plaintiff in the event of default:[7]

> (i) to take immediate possession of Collateral, without notice or
> resort to legal process, and for such purpose, to enter upon any
> premises on which Collateral or any part thereof may be situated
> and to remove the same therefrom, or, at its option, to render
> Collateral unusable or dispose of said Collateral on any Debtor's
> premises; (ii) to require Debtors to assemble the Collateral and
> make it available to the Corporation at a place to be designated by
> the Corporation; (iii) to exercise its or its affiliate's right of set-off
> or the Corporation lien as to any monies of any Debtor deposited
> in deposit accounts and investment accounts of any nature
> maintained by Debtor or the Corporation, without advance notice,
> regardless of whether such accounts are general or special; (iv) to
> dispose of Collateral, as a unit or in parcels, separately or with any
> real property interests also securing the Secured Obligations, in
> any county or place to be selected by the Corporation, at either
> private or public sale (at which public sale the Corporation may be
> the purchaser) with or without having the Collateral physically
> present at said sale.

(Id. at 7.) Defendants EMI Filtration Products Management Company, Inc., EMI Filtration Products Equipments Leasing, Inc., EMI Filtration Products-SLC, Inc., and EMI Filtration Products-Kent, Inc. unconditionally guaranteed the payment and performance of all obligations under the promissory note. (Id., Ex. D, DE # 1-17.)

As of September 2011, defendants EMI Filtration Products LLC and EMI Filtration Products Holding Company, Inc. were in default under the promissory note. (Harper Decl., DE # 35-1, ¶ 6; see also Compl., DE # 1-13, ¶ 29 (listing some of the events of default).) Plaintiff

---

[7]Default under the security agreement is defined to include default under the promissory note, (Compl., Ex. B, DE # 1-15, at 7), which in turn exists when payment is not made or any other obligation is not performed, among other things, (id., Ex. A, DE # 1-14, at 4).

6

has made demand for payment on the note and upon the EMI Defendants for possession of the Collateral. (Harper Decl., DE # 35-1, ¶ 8.) As of 1 July 2013, approximately $5.4 million remains due on the promissory note. (Compl., DE # 1-13, ¶ 30.) While it appears that the EMI Defendants initially cooperated with plaintiff in turning over some of the Collateral, it is evident that all of the Collateral has not been provided to plaintiff and some of it may have been transferred. (See Harper Decl., DE # 35-1, ¶¶ 8-10, 14 & Exs. A, B, E.)

By refusing to pay sums due under the promissory note and by failing to turn over the Collateral, the EMI Defendants have breached their contractual obligations. Accordingly, plaintiff has clearly shown that it is likely to succeed on its claim for breach of contract.

Turning to consideration of the irreparable harm plaintiff will suffer in the absence of preliminary relief, "[w]here secured creditors (under the UCC or otherwise) seek court intervention to maintain their position, the prospective loss of their *status quo* security interest has been held sufficient to constitute irreparable harm needed to justify an injunction." Plainfield Speciality Holdings II Inc. v. Children's Legal Servs. LLC, 634 F. Supp. 2d 833, 846 (E.D. Mich. 2009) (citing cases); see also Whitney Nat'l Bank v. The Flying Tuna, LLC, Civil Action No. 11-0249-WS-N, 2011 WL 2669450, at *2 (S.D. Ala. July 7, 2011) (when considering irreparable harm to a bank seeking to enjoin the borrower from disposing of property subject to its security interest, "[f]ederal courts recognize that 'the judicial process can be rendered futile by a defendant's action or refusal to act during the pendency of the suit' and that Rule 65 relief may be appropriate 'to preserve the court's power to render a meaningful decision after a trial on the merits" (citation omitted)).

> In the absence of a preliminary injunction, [the EMI Defendants] would potentially remain free to transfer, convey or otherwise

> dispose of assets to which [plaintiff] may otherwise be entitled as collateral pursuant to the [security a]greement. The result of such transfer, conveyance or disposal could be that any monetary judgment ultimately obtained by [plaintiff] for breach of the [promissory n]ote would be a hollow victory, absent collateral that can be seized or other assets belonging to [the EMI Defendants] that might be used to satisfy the judgment. Particularly given [the EMI Defendants'] silence in the face of the Rule 65 Motion, the Court finds that the irreparable harm element is satisfied as to the proposed injunction barring [them] from disposing of collateral within the scope of the [security a]greement.

Whitney Nat'l, 2011 WL 2669450, at *2.

Weighing the balance of the harms, the court concludes that the equities favor plaintiff. The EMI Defendants knew what they were bargaining away in return for the loan from plaintiff. By all accounts it appears that those entities have ceased functioning, and therefore, there should be little to no burden on them to refrain from selling or disposing of the Collateral. On the other hand, because the EMI Defendants are no longer functioning, without injunctive relief, plaintiff may lose its one viable remedy for the breach of the obligations owed to it. See id. at *3.

Finally, the public interest also favors granting injunctive relief.

> "[U]pholding the rights of . . . secured parties to repossess collateral without awaiting the resolution of unsecured creditor claims is in the best interest of our credit-based economy." The nature of the relief sought by [plaintiff] would serve the public interest in vindicating the system of security agreements that makes our economic system possible.
> Because the UCC system is designed to ensure that secured creditors do not have to fight with their debtors in litigation in order to obtain satisfaction of monies lent on security, allowing a debtor . . . to avoid its financial commitments and contractual obligations would not be in the public interest.

Plainfield Speciality Holdings, 634 F. Supp. 2d at 848 (some alterations and omissions in original) (citation omitted); see also Whitney Nat'l, 2011 WL 2669450, at *3 ("Banks would

understandably be loath to lend money if the borrowers could wriggle out of their security agreement obligations before entry of final judgment on a defaulted promissory note, simply by the sleight of hand of transferring collateral away from the borrower LLC to some other non-debtor entity controlled or managed by the same underlying corporate or individual interests.").

Plaintiff has established all factors to warrant preliminary injunctive relief. As far as the scope of that relief, plaintiff should be sufficiently protected by an injunction prohibiting the EMI Defendants from selling or disposing of the Collateral and from withholding the Collateral from plaintiff. Before issuing an injunction, the court is required to consider the appropriate amount of security for the movant to post. See Fed. R. Civ. P. 65(c). Plaintiff has not addressed this issue.

> In fixing the amount of an injunction bond, the district court should be guided by the purpose underlying Rule 65(c), which is to provide a mechanism for reimbursing an enjoined party for harm it suffers as a result of an improvidently issued injunction or restraining order. The amount of the bond, then, ordinarily depends on the gravity of the potential harm to the enjoined party:
>> [T]he judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained.
> 11A Charles Alan Wright et al., *Federal Practice & Procedure* § 2954, at 292 (2d ed. 1995). Where the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly. In some circumstances, a nominal bond may suffice. *See, e.g., International Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974) (approving district court's fixing bond amount at zero in the absence of evidence regarding likelihood of harm).

Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 421-22 n.3 (4th Cir. 1999)

9

(alteration in original). Considering that the risk of harm to the EMI Defendants is remote given plaintiff's strong showing of entitlement to preliminary injunctive relief, the court will require plaintiff to post security in a relatively nominal amount.

### III. CONCLUSION

Plaintiff's motion for judgment on the pleadings or, alternatively, to strike is DENIED WITHOUT PREJUDICE. Plaintiff's motion for preliminary injunction is ALLOWED as to the EMI Defendants and DENIED WITHOUT PREJUDICE as to defendants Darren Fitch and Laurie Fitch. Defendants Cody, Jordan, and Integrity's motions for extension of time, (DE ## 40, 43), are DENIED as moot because they have been dismissed from this action.

It is hereby ORDERED that:

1. EMI Filtration Products LLC, EMI Filtration Products Management Company, Inc., EMI Filtration Products Holding Company, Inc., EMI Filtration Products Equipments Leasing, Inc., EMI Filtration Products-SLC, Inc., and EMI Filtration Products-Kent, Inc. are enjoined from selling or disposing of any of their personal property and fixtures of every kind and nature including, without limitation, all accounts, equipment, accessions, fixtures, inventory, goods, chattel paper, instruments, investment property (including without limitation the Pledged Interests and the other Pledged Property identified in the UCC Financing Statements attached to the Security Agreement dated June 9, 2010), documents, letter-of-credit rights, deposit accounts and general intangibles, wherever located.

2. EMI Filtration Products LLC, EMI Filtration Products Management Company, Inc., EMI Filtration Products Holding Company, Inc., EMI Filtration Products Equipments Leasing,

Inc., EMI Filtration Products-SLC, Inc., and EMI Filtration Products-Kent, Inc. are enjoined from withholding the property identified in Paragraph 1 above from plaintiff;

3. Plaintiff shall post security with Clerk in the amount of $1,000.

4. The Clerk serve a copy of this order on the EMI Defendants at the address listed in the 1 November 2013 Order.

This 22 April 2014.

_____
W. Earl Britt
Senior U.S. District Judge